UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

In re:

ANTHONY JOSEPH SWAIN,                    Case No. 09-37495-KLP
CARRIE COLLINS SWAIN,                    Chapter 13

       Debtors.

## MEMORANDUM OPINION

Before the Court is the motion of the Chapter 13 Trustee, Carl M. Bates, to modify the Chapter 13 plan of debtors Anthony Joseph Swain and Carrie Collins Swain "due to an unanticipated and substantial change in the debtors' circumstances…." The Trustee makes his motion pursuant to § 1329 of the Bankruptcy Code, 11 U.S.C. § 1329.[1]

The Debtors agree that a modification of the plan is appropriate but disagree with the Trustee over the terms of the modification. The Trustee contends that payments under a modified chapter 13 plan for debtors whose income has substantially changed must be determined pursuant to the formula set out in § 1325(b) of the Bankruptcy Code, which necessitates a post-petition recalculation of "current monthly income" in order to ensure that the debtors comply with the requirement of §1325(b)(1)(B). Under that section, debtors must provide all of their projected disposable income to make payments to unsecured creditors under the plan. The Debtors propose modifications to the plan that disregard the § 1325(b) formula but adhere to the requirements specifically enumerated in § 1329(b)(1).

The Court agrees with the Trustee that the Debtors' plan should be modified in light of the Debtors' increased income. However, the Court does not agree with the

---

[1] All subsequent references to the Bankruptcy Code are to 11 U.S.C. §§ 101-1532.

Trustee's position that § 1325(b) applies to plan modifications under § 1329. Therefore, the Debtors are not required to calculate their plan payments according to the terms of § 1325(b)(2) and (3). For that reason, the Court grants the Trustee's motion, with the plan payments to be modified as proposed by the Debtors.

This Memorandum Opinion sets forth the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure, Fed. R. Bankr. P. 7052.[2]

## Jurisdiction

The Court has subject matter jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157(a) and 1334 and the General Order of Reference from the United States District Court for the Eastern District of Virginia dated August 15, 1984. A proceeding regarding the modification of a chapter 13 plan is a core proceeding. 28 U.S.C. § 157(b)(2)(A), and (O). Venue is appropriate in this Court pursuant to 28 U.S.C. § 1409(a).

## Procedural Background

The Debtors filed a Chapter 13 bankruptcy case on November 13, 2009. On November 19, 2009, the Debtors filed their initial Chapter 13 plan. An order confirming the plan was entered on February 2, 2010.

On February 1, 2012, the Trustee filed a motion to dismiss the Debtors' case for "unreasonable delay that is prejudicial to creditors." Prior to the hearing on the Trustee's motion, the Debtors filed a modified plan. In response, the Trustee withdrew his motion to dismiss.

---

[2] To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such, and to the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

2

On March 30, 2012, the Trustee filed an objection to confirmation of the modified plan and scheduled a hearing on the objection for April 11, 2012. The parties continued the April 11 hearing to April 25, May 23, July 18, August 15, September 12, and finally September 25. At the hearing held September 25, 2012, the Trustee's objection to the first modified plan was sustained by the agreement of the parties.

On October 16, 2012, the Debtors filed a second modified plan. The Trustee filed an objection to the confirmation of the second modified plan and scheduled it for a hearing on November 28, 2012. The hearing was continued until December 12, 2012, at which time the Trustee's objection was sustained by agreement.

On January 2, 2013, the Debtors filed their third modified plan. On February 12, 2013, the Trustee filed both an objection to the confirmation of the third modified plan and a motion to modify the Debtors' chapter 13 plan. The Trustee's motion seeks to modify the plan by increasing the plan payment and the percentage distribution to unsecured creditors.

The hearing on the Trustee's objection to confirmation of the third modified plan was scheduled on February 20, 2013, but was continued to March 20, 2013, so that it could be heard simultaneously with the Trustee's modification motion. On March 20, 2013, the hearings on the motion to modify and the objection to confirmation of the third modified plan were continued until May 1, 2013, and both hearings were again continued, this time until August 13, 2013. On August 9, 2013, the Debtors filed a motion to continue the August 13 hearings, which was granted without objection, resulting in both matters being scheduled for hearing on October 10, 2013.[3]

---

[3] The Debtors' motion represented that the Trustee had consented to the requested continuance.

3

The day before the continued hearings, the Debtors filed amended Schedules I and J as well as a response to both the motion to modify and the Trustee's objection to the confirmation of the third modified plan.  The Trustee filed a memorandum in response immediately prior to the October 10, 2013, hearing.

At the October 10 hearing, the parties asked the Court to sustain by agreement the Trustee's objection to the third modified plan.  Both parties offered exhibits, which were admitted into evidence without objection, and agreed to continue the hearing on the motion to modify for a further evidentiary hearing on November 4, 2013.  The parties advised the Court that they would attempt to submit factual stipulations prior to that date.

On November 1, 2013, the parties filed a stipulation of facts with the Court.  In lieu of conducting a further hearing on November 4, 2013, the Court established a briefing schedule on the Trustee's motion to modify.  A hearing on the motion to modify was scheduled for December 16, 2013, in the event the parties desired to offer additional evidence and arguments.  On November 18, 2013, the parties submitted an amended stipulation.  The Court cancelled the hearing scheduled for December 16, 2013, upon the joint request of the parties.  The parties now seek a ruling on the motion to modify based upon the existing record.

## Facts

The evidence consists of the amended stipulation and the exhibits entered into evidence on October 10, 2013.  The amended stipulation includes the following:

1. The Swains filed the instant Chapter 13 bankruptcy on November 13, 2009.

2. Carl M. Bates was appointed as the Chapter 13 Trustee in this case.

4

3. On the Swains' Original Form B22C (Official Form 22C) filed on November 13, 2009, their combined "Current Monthly Income", as shown on Line 14, was $9,895.22. At the time, the Swains had a household size of three (3), and their combined annualized current monthly income was above the applicable median family income for their household size. Therefore, the Swains completed Part IV of Form B22C. On Part IV of Form B22C, the Swains took deductions under §707(b)(2) of $10,218.41, resulting in a "Monthly Disposable Income" ("DMI"), as shown on Line 59, of less than zero (specifically, negative $323.19).

4. The Swains' first Chapter 13 Plan in this case was filed on November 19, 2009, and confirmed by this Court on February 2, 2010 (the "Confirmed Plan"). The Confirmed Plan provides for payment to the Trustee of $1,435.00 per month for 60 months, for total plan funding of $86,100.00. The Confirmed Plan proposed to pay (1) the remaining attorney fees, (2) priority debt owed to the Virginia Department of Taxation, and (3) claims secured by personal property to owed to First Market Bank, Marks & Morgan, and Navy Federal Credit Union. Additionally, the Confirmed Plan provided for the surrender of the Swains' primary residence, which served as collateral for the loans held by BAC Home Loans and Navy Federal Credit Union. Finally, the Confirmed Plan proposed an estimated dividend of two percent (2%) to unsecured creditors.

5. On February 1, 2012, the Trustee filed a Motion to Dismiss the case because the Confirmed Plan did not provide sufficient funding to provide for all priority and secured claims. This underfunding was due to the Internal Revenue Service's priority claim (Claim No. 26-1) for $10,871.32, which was not provided for by the Confirmed Plan, as the claim included $6,538.00 in post-petition tax liability.

6. On March 2, 2012, the Swains filed a Modified Plan that provided for the priority and secured claims, and on that basis, the Trustee withdrew his Motion to Dismiss. On March 30, 2012, the Trustee objected to that Modified Plan on the basis that it failed to comply with the disposable income test of 11 U.S.C. §1325(b).

7. On June 7, 2012, the Internal Revenue Service amended its priority claim to $17,395.32 to include some additional post-petition tax liabilities in the amount of $6,524.00. It is now designated as Claim No. 26-2.

8. The Swains filed Amended Schedules I and J on October 9, 2013. On the Amended Schedule I, Mr. Swain's gross monthly income is shown as $9,809.91, which is the approximate average of his monthly income over the six (6) months prior to the amendment. Mr. Swain's monthly tax withholdings were calculated in the same manner. The Swains now have a

5

household size of 4 and their Amended Schedule J shows monthly household expenses of $6,664.00.

9. On November 18, 2013, the Trustee filed with the Court a proposed Revised Form 22C as an Amended Exhibit. On the Trustee's proposed Revised Form 22C, Mr. Swain's gross monthly income is shown as $10,099.25, which is an average of his monthly income through the twelve (12) months prior to the October 10, 2013 hearing. Mrs. Swain's income is the same as shown on her Amended Schedule I. The Revised Form 22C allows the Debtors total deductions of $13,592.99 and results in a Disposable Monthly Income of $2,298.26.

10. The Swains propose to make three (3) payments to the Trustee of $3,274.00 per month beginning in October 2013 and continuing through December 2013. Beginning in January 2014, Mrs. Swain's health insurance premium will increase by $100.00 per biweekly pay period or $216.66 per month, so the Swains propose to reduce their payment to the Trustee to $3,058.00 per month for the final eleven (11) months of their Plan beginning in January 2014. Taking into account their payments to the Trustee through September 2013 of $65,370.76, this would result in total payments to the Trustee of $108,830.76. This would provide for full payment of administrative expenses, including the Trustee's commission at approximately six percent (6%), priority claims, and secured claims, plus approximately $11,000.00 which would be available for distribution to non-priority unsecured creditors.

11. The Trustee proposes that the Swains' Plan should be modified to require that they pay their Disposable Monthly Income, as shown on the proposed Revised Form 22C, which is $2,298.26, on a monthly basis for the final thirteen (13) months of the Plan. In order to pay administrative expenses, including the Trustee's commission at approximately six percent (6%), priority claims, and secured claims, plus $2,298.26 per month to non-priority unsecured creditors, the Swains would have to pay the Trustee a total amount of $130,123.76, which averages $ 4,981.00 per month for the final thirteen (13) months of the Plan.

The Exhibits (Nos. 1 through 4, submitted by the Trustee, and A and B, submitted by the Debtors) include the Trustee's proposed Revised Form 22C (Exhibit 1), pay advices for Mr. Swain for the period from June, 2012, through September, 2013 (Exhibit 2), pay advices for Mrs. Swain for the period from December, 2012, through September, 2013 (Exhibit 3), a copy of 11 U.S.C. § 1329 (Exhibit 4), Amended Schedules I & J dated

6

October 9, 2013 (Exhibit A) and pay advices for Mr. Swain for the period from March 1, 2013, through August 31, 2013, together with pay advices for Mrs. Swain for the period from July 28, 2013, through September 21, 2013 (Exhibit B).

## Analysis and Conclusions of Law

A confirmed Chapter 13 plan may be modified pursuant to 11 U.S.C. § 1329(a) if the debtor experiences a "substantial" and "unanticipated" post-confirmation change in financial circumstances. *Murphy v. O'Donnell (In re Murphy),* 474 F.3d 143, 149 (4th Cir. 2007) (citing *Arnold v. Weast (In re Arnold),* 869 F. 2d 240, 243 (4th Cir. 1989)). The parties are in agreement that the Debtors' increased income constitutes a substantial and unanticipated change to their financial condition since the confirmation of their chapter 13 plan.

The Trustee is seeking a modification of the plan, and the Debtors do not oppose modification. In fact, the Debtors have sought on three occasions to modify the plan by filing modified plans pursuant to the Court's applicable Local Rule.[4] On each occasion, the Trustee objected to the proposed modification on the grounds that the Debtors failed to properly provide for payment of their disposable income as required by 11 U.S.C. §1325(b)(2). By agreement of the parties, none of the modifications proposed by the Debtors have been submitted to the Court for approval over the Trustee's objections. Consequently, the terms of the original plan, confirmed on February 2, 2010, remain in effect.

The Fourth Circuit in *Murphy* acknowledged that a bankruptcy court has discretion to grant a motion to modify a confirmed plan pursuant to 11 U.S.C.

---

[4]Local Bankruptcy Rule 3015-2(F).

7

§ 1329(a)(1) or (2) so long as the proposed modification does not seek to relitigate issues which were decided in the confirmation order or which were available at the time of confirmation but not raised by the parties. 474 F.3d at 149 (citing *In re Butler,* 174 B.R. 44, 47 (Bankr. M.D.N.C. 1994)). In this case, the record supports the joint contention of the parties that the Debtors experienced a substantial, unanticipated change in their financial condition after plan confirmation. The Debtors' combined average monthly income, as set forth in their original Schedule I (Docket No. 1), and relied upon at the time their plan was confirmed, was $6712.65. Their Amended Schedule I (Docket No. 72) dated October 9, 2013, states that the Debtors' combined average monthly income is now $9938.68, which represents an increase of nearly 50% since the plan was confirmed, an amount the Court finds to be substantial. There is no indication that this increase in combined average monthly income was, or should have been, anticipated at the time of confirmation. Therefore, this Court finds that under the criteria established by the Fourth Circuit in *Murphy* and *Arnold,* modification of the plan is appropriate.

The dispute between the Trustee and the Debtors involves the extent, if any, to which 11 U.S.C. § 1325(b) determines the amount that must be paid by the Debtors under the modified plan. The Trustee argues that the disposable income test of 11 U.S.C. § 1325(b)(1)(B), as defined in 11 U.S.C. § 1325(b)(2) and (3), applies to plan modifications under 11 U.S.C. § 1329(a) and that the Court should base the Debtors' required payments on an "amended" Form 22C (Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income). The Debtors assert that the disposable income test of § 1325(b) is not applicable to § 1329(a) modifications and that the provisions of §§ 1322(a), 1322 (b) and 1325(a), made

8

applicable under 11 U.S.C. § 1329(b)(1), including the requirements of good faith and feasibility, are solely determinative.

**Plan Confirmation Requirements.** Section 1325 of the Bankruptcy Code sets forth the requirements that must be met in order to obtain confirmation of a Chapter 13 plan. Section 1325(a) lists the essential requirements, which include that the plan must be proposed in good faith. Under § 1325(b)(1), if the trustee or an unsecured creditor objects to a proposed chapter 13 plan, the plan must provide that all of the debtor's "projected disposable income" received in the applicable commitment period be applied to payments to unsecured creditors. The Bankruptcy Code does not define "projected disposable income." The Supreme Court, however, has stated that projected disposable income should be calculated based upon disposable income, "and in most cases, nothing more is required." *Hamilton v. Lanning*, 560 U.S. 505, 519 (2010).

"Disposable income" is defined in § 1325(b)(2) as "current monthly income received by the debtor . . . less amounts reasonably necessary to be expended . . . for the maintenance or support of the debtor . . . ." "Current monthly income" is defined in § 101(10A) as "the average monthly income from all sources that the debtor receives . . . *derived during the 6-month period ending on . . . the last day of the calendar month immediately preceding the date of the commencement of the case . . . .*" (emphasis added). Section 1325(b)(3) requires that an above-median income debtor use the "means test" of § 707(b)(2) to calculate "amounts reasonably necessary" for maintenance or support of the debtor. Section 707(b)(2)(ii) provides that certain monthly expenses shall be limited to the amounts specified under the National Standards and Local Standards issued by the Internal Revenue Service. *See Mort Ranta v. Gorman*, 721 F.3d 241, 250-51 (4th Cir.

9

2013) (includes a discussion of "projected disposable income" in the context of plan confirmation).

Official Form 22C calculates a debtor's monthly disposable income by subtracting the allowed § 707(b)(2) deductions, and other allowed expenses, from the debtor's current monthly income.  This amount is described on Form 22C as the "Monthly Disposable Income Under §1325 (b)(2)" ("MDI") and represents the amount required to be paid to unsecured creditors pursuant to §1325(b)(1)(B) in order to obtain confirmation of the plan.

**Plan Modification Requirements.** Confirmation of a plan under Chapter 13 occurs only once. *In re Davis*, 439 B.R. 863, 866 (Bankr. N.D. Ill. 2010). After confirmation, a plan may be modified pursuant to 11 U.S.C. §1329:

> (a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to--
> > (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;
> > (2) extend or reduce the time for such payments;
> > (3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan; or
> > (4) reduce amounts to be paid under the plan by the actual amount expended by the debtor to purchase health insurance for the debtor (and for any dependent of the debtor if such dependent does not otherwise have health insurance coverage) if the debtor documents the cost of such insurance and demonstrates that--
> > > (A) such expenses are reasonable and necessary;
> > > (B)    (i) if the debtor previously paid for health insurance, the amount is not materially larger than the cost the debtor previously paid or the cost necessary to maintain the lapsed policy; or

10

>> (ii) if the debtor did not have health insurance, the amount is not materially larger than the reasonable cost that would be incurred by a debtor who purchases health insurance, who has similar income, expenses, age, and health status, and who lives in the same geographical location with the same number of dependents who do not otherwise have health insurance coverage; and
> (C) the amount is not otherwise allowed for purposes of determining disposable income under section 1325(b) of this title;
> and upon request of any party in interest, files proof that a health insurance policy was purchased.
>
> (b)(1) Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section.
>> (2) The plan as modified becomes the plan unless, after notice and a hearing, such modification is disapproved.

11 U.S.C. § 1329(a) and (b).

The Trustee argues that all of the requirements of § 1325 for confirmation of a chapter 13 plan are also applicable to the modification of a plan, including the requirement of § 1325(b) that all the Debtors' projected disposable income be applied to make payments to unsecured creditors. Therefore, the Trustee proposes that the Debtors' payments under the modified plan be calculated based upon the Trustee's proposed Revised Form 22C.

Courts have split over whether 11 U.S.C. §1325(b) applies to chapter 13 plan modifications.[5] The Trustee points to several decisions finding that the provision does apply. *See, e.g., In re Heideker,* 455 B.R. 263 (Bankr. M.D. Fla. 2011); *In re King*, 439

---

[5] In 2006, one prescient commentator noted that "[a]lthough arguments from statutory construction can be made to capture § 1325(b) as an applicable test at modification after confirmation, reported decisions before BAPCPA split sharply, leaving open the question whether the disposable income test in § 1325(b) applies at modification after confirmation under § 1329." Keith M. Lundin & William H. Brown, Chapter 13 Bankruptcy, 4th Edition, § 506.1, at ¶ 12, Sec. Rev. Mar. 29, 2006, www.Ch13online.com.

11

Case 09-37495-KLP    Doc 92    Filed 04/01/14    Entered 04/01/14 12:50:33    Desc Main
                             Document       Page 12 of 20

B.R. 129 (Bankr. S.D. Ill. 2010). Most courts that have found § 1325(b) applicable to plan modifications have done so in order to require that an above median income debtor seeking to reduce the term of the plan continues to adhere to the "applicable commitment period" of 1325(b)(1)(B).

*In re Heideker* is representative of the line of cases applying § 1325(b) to plan modifications. In that case, in which the bankruptcy court addressed plan modifications proposed by four separate debtors, the debtors sought to reduce the terms of the plans below the applicable commitment period without paying unsecured creditors in full. In each case, the trustee objected to the proposed modification. The court, citing the Eleventh Circuit decision of *Whaley v. Tennyson (In re Tennyson)*, 611 F.3d 873 (11th Cir. 2010), held that the language of § 1329(b) requires the application of the applicable commitment period of § 1325(b) to a plan modification. It therefore determined that the applicable commitment period is a durational requirement and the above-median income debtor must present a plan with a term of no less than five years unless his unsecured debts are paid in full. Although *Tennyson* involved plan confirmation rather than modification, the bankruptcy court in *Heideker* concluded that the Eleventh Circuit would apply the same rationale to plan modifications and that to hold otherwise "would contravene the plain meaning of Sections 1325(b) and 1329, as well as Congress' intent in enacting BAPCPA." 455 B.R. at 272.[6]

---

[6] The court in *Heideker* read § 1329 as "implicitly" incorporating § 1325(b) because § 1329(b) provides that the requirements of § 1325(a) apply to modifications under § 1329(a) and § 1325(a)'s initial clause reads: "[e]xcept as provided in subsection (b) . . . ." 455 B.R. at 269. The court also noted that the failure to apply § 1325(b) to plan modifications would enable a debtor to pay off the plan early, thereby depriving creditors of the opportunity to benefit from potential future increases in income which, in turn, is inconsistent with Congress' intent in enacting BAPCPA to maximize the funds paid to unsecured creditors. *In re Heideker,* 455 B.R. 263, 271 (Bankr. M.D. Fla. 2011).

12

The weight of authority is that § 1325(b) does not apply to § 1329 plan modifications.[7] The Bankruptcy Appellate Panel for the Ninth Circuit addressed the issue in *Sunahara v. Burchard* (*In re Sunahara*), 326 B.R. 768, 781 (B.A.P. 9th Cir. 2005) (decided prior to the enactment of BAPCPA[8]) and declared that "[s]ection 1329(b) expressly applies certain specific Code sections to plan modifications but does *not* apply § 1325(b). Period." *Id*. at 781. *See also* 8 Collier on Bankruptcy ¶ 1329.03 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) ("[S]ection 1325(b) is inapplicable to plan modifications . . . .").

In *In re Davis*, 439 B.R. 863 (Bankr. N.D. Ill. 2010), the Bankruptcy Court for the Northern District of Illinois reviewed the reasons many courts have given when holding that § 1325(b) is inapplicable to plan modifications. In *Davis*, an above-median income debtor with a confirmed plan paying 100% of unsecured claims was permitted to modify her plan after losing her job, with the result being that unsecured creditors would not be paid in full. The court allowed the shortening of her plan from 54 months to 35 months over the trustee's objection that the plan length did not comply with § 1325(b) and gave three primary reasons for its decision. First, the court observed that plan modification is not the same as plan confirmation and, by its plain language, § 1325(b) applies to confirmation, not modification. *Id*. at 866.[9] Second, § 1329(b) expressly applies only

---

[7] *See e.g. In re Martin*, No. 10-64790, 2013 WL 6196566 (Bankr. N.D. Ohio Nov. 27, 2013); *In re Lorenzo*, No. 09-28532-BKC-AJC, 2013 WL 1953319 (Bankr. S.D. Fla. May 10, 2013); *In re Crim*, 445 B.R. 868, 871 (Bankr. M.D. Tenn. 2011); *In re Kearney*, 439 B.R. 694, 696 (Bankr. E.D. Wis. 2010); *In re McCully,* 398 B.R. 590, 593–94 (Bankr. N.D. Ohio 2008); *In re Hill*, 386 B.R. 670, 675–76 (Bankr. S.D. Ohio 2008); *In re Howell*, No. 07–80365, 2007 WL 4124476, at *1 (Bankr. W.D. La. 2007); *In re Ewers*, 366 B.R. 139, 142–44 (Bankr. D. Nev. 2007); *In re Young*, 370 B.R. 799, 802 (Bankr. E.D. Wis. 2007).

[8] Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), Pub. L. No. 109-8, 119 Stat. 23 (2005).

[9] (b)(1) If the trustee or the holder of an allowed unsecured claim objects to the **confirmation** of the plan, then the court may not approve the plan unless, as of the effective date of the plan--

13

§ 1322(a) 1322(b), 1323(c) and "the requirements of Section 1325(a)"[10] to plan modifications and, therefore, under the maxim *expressio unius est exclusio alterius*, § 1325(b) is excluded. *Id*. at 866-67.[11] Third, no absurdity results if, using the canons of statutory construction, § 1325(b) is found to be inapplicable. The court pointed out that there are other code provisions available to prevent improper plan modifications and specifically noted that the good faith requirement of § 1325(a)(3) applies to plan modifications. *Id*. at 868-69.

The Fourth Circuit has not directly addressed whether § 1325(b) applies to plan modifications, although the case of *Murphy v. O'Donnell (In re Murphy),* 474 F.3d 143 (4th Cir. 2007) provides some insight. In *Murphy*, the court reversed the bankruptcy court's decision to grant a trustee's motion to modify the chapter 13 plan of one pair of joint debtors and affirmed the granting of a similar motion with respect to another pair of joint debtors. Each instance dealt with the joint debtors' desire to pay off a confirmed chapter 13 plan early with a less than 100% distribution to unsecured creditors.

The first debtors, who had experienced a substantial postpetition reduction in income, sought an early payoff through the refinancing of a mortgage. The court, finding that the refinancing did not alter the financial condition of the debtor and, therefore, did

---

(A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
(B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.
11 U.S.C. § 1325(b)(1) (emphasis added).
  [10] "Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section." 11 U.S.C. § 1329(b)(1).
  [11] The court addressed the argument made by other courts, including the court in *Heideker*, that § 1329 "implicitly" incorporates § 1325(b). The nine conditions specified in § 1325(a) are required for confirmation of a plan. By contrast, § 1325(b) is not a prerequisite for confirmation but rather has the potential to prevent confirmation if a party objects. Therefore, the language of § 1325(a) that it applies "[e]xcept as provided in subsection (b)" does not include § 1325(b) as one of the "requirements of § 1325(a) made applicable to plan modification under § 1329(b)(1)." *In re Davis*, 439 B.R. 863, 867 (Bankr. N.D. Ill. 2010).

14

not establish a basis for plan modification, observed that the early payoff benefitted creditors by eliminating the risk that the debtors may be unable to make future payments. *Id*. at 151.  In refusing to grant the trustee's request that the Debtors utilize sufficient proceeds from the refinance to pay 100% of their debts, the court noted that its decision struck "the right balance between debtors on the one hand and creditors on the other." *Id*. Though the case was decided prior to the implementation of BAPCPA, it illustrates the harsh results that would ensue from an inflexible, "mechanical" approach[12] to plan modification if § 1325(b) is strictly applied.[13]

By contrast, the second pair of joint debtors in *Murphy*, who had benefitted from an unanticipated, substantial postpetition increase in the value of their real property, was required to pay 100% to unsecured creditors pursuant to a modified plan. *Id*. at 152.  The court reached this result solely by implicating the standards set forth in § 1325(a)(3) ("good faith"), (4) ("best interests of creditors") and (6)("ability to pay"). *Id*. at 153.[14]

*Murphy* and its predecessor, *Arnold*, suggest that it is not likely that the Fourth Circuit would apply § 1325(b) to a proposed plan modification.  A review of *Hamilton v. Lanning*, 560 U.S. 505 (2010), leads to the conclusion that the Supreme Court would also recognize the impracticality of applying the strict standards imposed by § 1325(b) to plan

---

[12] The Fourth Circuit has shown a reluctance to apply a mechanical approach in application of § 1325. *Hamilton v. Lanning*, 560 U.S. 505, 524 (2010) (allowing a court, in calculating a debtor's projected disposable income, to consider changes that are "known or virtually certain at the time of confirmation.")  The Court held that "the Code does not insist upon rigid adherence to the mechanical approach in all cases. . . ." *Id*. at 522.

[13] Courts that would impose the five year applicable commitment period on the basis that it is mandated by § 1325(b) would discourage an above median debtor from following the example of the *Murphy* debtor who chose "the more noble course" of eliminating a portion of the equity in his property in order to fulfill his plan payment obligation rather than seeking to pay less. *Murphy v. O'Donnell (In re Murphy)*, 474 F.3d 143, 151 (4th Cir. 2007).

[14] Likewise, in *Arnold v. Weast (In re Arnold)*, 869 F. 2d 240, 243 (4th Cir. 1989), no reference is made to § 1325(b) in the context of a chapter 13 plan modification.  The court, "balancing . . . the interests of both the debtors and the creditors," modified a debtor's plan to increase the term from 36 to 60 months and the monthly payments by $700 even though the debtor's income had increased by $10,000 per month. *Id*.

15

modifications after BAPCPA, particularly given the absence of a clear intent on the part of Congress.[15] In light of this and after a thorough review of current case law, the Court finds that § 1325(b) does not apply to motions to modify a chapter 13 plan under § 1329, and payments under a modified plan are not required to be determined according to the terms of § 1325(b)(2) and (3).

In the present case, the Trustee is seeking to modify the Debtors' plan to increase the remaining monthly payments[16] and asserts that the only way to determine the payments due under a modified plan is to use Form 22C and the calculation of MDI contained therein. Therefore, in order to support the amount by which he claims the Debtors' plan payments should be increased, the Trustee has submitted a "proposed Revised Form 22C" (Docket No. 83) which, as stipulated by the parties, provides a MDI of $2298.26. Mr. Swain's gross monthly income, for purposes of calculating his revised MDI, is based on an average of his monthly income through the 12 months prior to October 10, 2013, and Mrs. Swain's income is the same as shown on her Amended Schedule I. No clear explanation is given why the twelve month period prior to October 10, 2013 was utilized to compute Mr. Swain's MDI nor why the amount shown on the Amended Schedule I was used for purposes of establishing Mrs. Swain's MDI; nevertheless, the Trustee insists that the proposed amended Form 22C must be strictly

---

[15] "Pre–BAPCPA bankruptcy practice is telling because we will not read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended such a departure." *Hamilton v. Lanning*, 560 U.S. at 517 (citations omitted.)

[16] Neither party contends that Debtors' plan should be modified to reduce its length, which is currently 60 months, the maximum length of a chapter 13 plan; therefore, whether the "applicable commitment period" of 11 U.S.C. § 1235 (b)(1)(B), as a temporal obligation, applies to plan modifications is not specifically an issue in this case.

16

applied to determine the amount to be paid under a modified plan, just as the original Form 22C was utilized in association with confirmation of the plan.[17]

It is not necessary for the Court to pass upon which period of time should be used to calculate the Debtors' current monthly income because the Court has determined that § 1325(b) is not applicable to chapter 13 plan modification. Recalculation of MDI by the use of Form 22C is unnecessary, as is the application of § 707(b)(2) as incorporated by § 1325(b)(3). However, the parties are in agreement that Debtors' plan should be modified, so the Court must now decide how the plan should be modified.

The Trustee's request for modification of the plan and the Debtors' proposed modifications both seek to increase the amount of payments on claims held by unsecured creditors, a modification permitted under 11 U.S.C. § 1329(a)(1) and justified under the "substantial and unanticipated change in the debtor's financial condition" test adopted by the Fourth Circuit in *In re Arnold* and *In re Murphy*. The proposed modifications must be assessed under the requirements of 11 U.S.C. §1325(a), including good faith and

---

[17] In the Trustee's brief in support of his motion to modify the plan payments (Docket No. 85, pages 13-14), the Trustee asserts that Mr. Swain's income is seasonal and that, therefore, a larger period of time, perhaps 12 months, but no less than 9 months, of monthly gross income received prior to the determinative date must be averaged to arrive at a revised "current monthly income" for purposes of determining the "projected" disposable income required to be paid under a modified plan. The Trustee has previously submitted proposed Revised Forms 22C that assert amounts for MDI that differ from the one the Trustee now insists should control, including the Form 22C designated as Exhibit 1 which the Trustee offered at the hearing on October 10, 2013. The existence of numerous versions of the proposed Revised Form 22C calls attention to the lack of objective criteria for determining the period of time to utilize in calculating a "revised" current monthly income figure which, in turn, demonstrates the difficulty of revising Form 22C based on a postpetition change in income and, thus, the impracticality of the Trustee's position.
  "Current monthly income" ("CMI") is defined in the Bankruptcy Code as "average monthly income . . . derived during the 6-month period ending on . . . the last day of the calendar month immediately preceding the date of the commencement of the case . . . ." 11 U.S.C. § 101(10A). CMI is established at the time of commencement of the case and, by definition, does not change according to postpetition fluctuations in a debtor's income. The Bankruptcy Code does not contemplate that CMI will be recalculated after plan confirmation and provides no means, or formula, for doing so. Submission of a revised Form 22C, such as that offered by the Trustee, is not a prerequisite to a plan modification.

17

feasibility. 11 U.S.C. § 1329(b)(1); 11 U.S.C. § 1325(a); *see In re Murphy*, *supra* at 152-153; *In re Davis, supra* at 869.

The Trustee's sole criteria for determining the modified monthly payment amount is to apply § 1325(b) and a "revised" Form 22C, which the Court has found is inapplicable to plan modification.[18] The Trustee has failed to present any other evidence by which the Court may assess the Debtors' good faith, the feasibility of his proposed modification or the reasonableness of the Debtors' asserted expenses.

In evaluating the Debtors' proposed modification, the Court notes that on October 9, 2013, the Debtors filed an amended Schedule I, which reflects a substantial increase in their average monthly income since the confirmation of the plan, as well as an increase in the Debtors' household size from three to four. (Amended Stipulation No. 8). At the same time, the Debtors filed an amended Schedule J, which includes changes in the Debtors' average monthly expenses.[19] The greatest increase in monthly expenses since plan confirmation is attributable to child care and transportation, and this increase appears to be directly related to the birth of another child after the bankruptcy filing. (Docket No. 72). The amended Schedule J states that the Debtors' net monthly income is

---

[18] The Trustee seeks to require that the Debtors pay $4981.00 per month for the final thirteen months of their bankruptcy which, according to the Trustee's computations, provides $2298.26 per month for the benefit of unsecured creditors, which is the amount to which unsecured creditors would be entitled pursuant to the amended Form 22C. (Amended Stipulation No. 11). The Debtors propose three monthly payments of $3274.00 followed by eleven monthly payments of $3058.00. (Amended Stipulation No. 10). The Debtor's proposed modification would result in an increased distribution to unsecured creditors over the amount provided under the plan, though the increase would be less than that sought by the Trustee.

[19] At least one court has found that, while not mandatory in plan modifications, the expense provisions of § 707(b)(2)(A)(ii)(I) may be used as "an objective point of reference" in evaluating a debtor's expenses. *In re Martin*, No. 10-64790, 2013 WL 6196556 (Bankr. N.D. Ohio Nov. 27, 2013).

$3274.68, the amount the Debtors propose as a modified payment amount for the remainder of their 60 month plan.[20]

As noted above, modification of a chapter 13 plan pursuant to 11 U.S.C. § 1329 requires that the Court apply standards of good faith, best interest of creditors and feasibility pursuant to 11 U.S.C. § 1325(a)(3), (4) and (6).  The Court finds that modification of the plan, as proposed by the Debtors, meets these standards. The current income and expenditures of the Debtors, as set forth in the amended Schedules I & J, establish the feasibility of the proposed payments, including the adjustment proposed in connection with the anticipated increase in health insurance premiums.  The increased payments will generate greater distributions to the unsecured creditors without prejudicing creditors holding administrative, secured and priority claims; therefore, the modification is in the best interest of creditors.  Finally, there is no evidence to indicate that the Debtors are not proceeding in good faith.[21]

For these reasons, the Court grants the Trustee's motion.  The plan will be modified, effective October 1, 2013, to provide for an increase in the monthly payments

---

[20] The monthly payment would be reduced by $216 for the final 11 months as a result of an anticipated increase in health insurance expense.

[21] The Trustee maintains that the increased payments pursuant to a modified plan should have been commenced sooner, when the Debtors first obtained an increase in income, and that the Debtors should not be allowed to benefit from the procedural delays.  The Court notes, however, that on three occasions the Debtors proposed modified plans that would have increased the amount to be paid to unsecured creditors.  On each occasion, the Trustee objected, resulting in the denial of the proposed modifications or any other modifications that the Court may have ordered.  The Trustee did not seek an order requiring an increase in the payment amounts until he filed his motion to modify on February 12, 2013.  The delay in disposing of this motion appears to be attributable to both parties, as the delays were by mutual consent.  Therefore, the Court declines to order modification of the Debtor's plan prior to the October, 2013, date proposed by the Debtors.

The Court notes with concern that the Debtors have failed to pay various postpetition tax obligations, which have resulted in supplemental priority tax claims that the Debtors propose to pay over the remaining term of their bankruptcy out of their future income.  The Trustee's position is that the payment of the tax obligations should not be at the expense of unsecured creditors who would otherwise stand to receive a larger share of the increased monthly payments.  The reasons why the Debtors incurred these obligations have not been provided and, therefore, the Court is unable to include them in its good faith analysis.

to the Trustee for the remaining 14 months of the plan. The Debtors shall make three payments to the Trustee of $3274.00 per month beginning with the plan payment due in October, 2013, followed by payments of $3058.00 per month for eleven additional months. A separate order will be issued.

Signed: March 31, 2014                    /s/ Keith L. Phillips
                                          United States Bankruptcy Judge

Copies to:

Entered on Docket 4/1/14

Anthony Joseph Swain
Carrie Collins Swain
5302 Yellow Birch Drive
Fredericksburg, VA 22407

Mark C. Leffler
Boleman Law Firm, P.C.
P.O. Box 11588
Richmond, VA 23230-1588

Emily C. Fort
Boleman Law Firm, P.C.
P.O. Box 11588
Richmond, VA 23230

Carl M. Bates
P. O. Box 1819
Richmond, VA 23218

Susan Hope Call
Chapter 13 Trustee's Office
P.O. Box 1819
Richmond, VA 23218